## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

JOHN ALEXANDER BARNES, JR.,
      Petitioner,

v.                               Case No. 5:20-cv-004-KKM-PRL

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,
      Respondents.

_____

## <u>ORDER</u>

     John Alexander Barnes, Jr., a Florida prisoner, filed a counseled Petition for Writ

of Habeas Corpus under 28 U.S.C. § 2254 challenging his state court conviction based on

the alleged ineffective assistance of trial counsel and an alleged error by the trial court.

(Doc. 1.)[1] Having considered the petition, (*id.*), the response in opposition, (Doc. 9), and

---

[1]     A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled while a properly filed motion for collateral relief is pending in state court. *See* § 2244(d)(2). The state appellate court affirmed Barnes's conviction and sentence on June 5, 2018. (Doc. 9-1, App. 12); *Barnes v. State*, 247 So. 3d 520 (Fla. 5th DCA 2018). His judgment became final on Tuesday, September 4, 2018, when the time to petition the Supreme Court of the United States for a writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002); *see also* Sup. Ct. R. 30.1 (2017) (if the last day in a period is a federal legal holiday under 5 U.S.C. § 6103, the period "shall extend until the end of the next day that is not a Saturday, Sunday, federal legal holiday, or day on which the Court building is closed.").

     After 134 days of un-tolled time, Barnes, through counsel, filed an unsigned motion for postconviction relief in state court on January 16, 2019. (Doc. 9-2, App. 14.) On July 29, 2019, the postconviction court dismissed the original motion without prejudice because Barnes failed to sign it, meaning there was no verification of the oath under Florida Rule of Criminal Procedure 3.850(c). (*Id.*, App. 15.) But the postconviction court gave Barnes leave to file an amended motion within 30 days. (*See id.*) Five days later, Barnes, through counsel, filed an amended motion for postconviction relief that complied with the oath requirement. (*Id.*, App. 16.) Although Barnes did not properly file a motion for

Case 5:20-cv-00004-KKM-PRL   Document 18   Filed 03/14/23   Page 2 of 39 PageID 484


Barnes's reply, (Doc. 12), the petition is denied. And because reasonable jurists would not disagree, Barnes is not entitled to a certificate of appealability.

## I.    BACKGROUND

### A. Procedural History

Barnes entered a negotiated plea of no contest to one count of sexual battery, one count of battery, and two counts of violating the conditions of pretrial release. (Doc. 9-2, App. 21 (Judgment); Doc. 9-1, App. 2 (Transcript of Change-of-Plea Hearing), pp. 10–25.) He unsuccessfully moved to withdraw his plea before sentencing. (Doc. 9-1, App. 5; App. 6.) The trial court adjudicated Barnes guilty and sentenced him to ten years in prison. (Doc. 9-2, App. 21; App. 24.) The state appellate court per curiam affirmed his conviction and sentence. (Doc. 9-1, App. 12.) Barnes unsuccessfully moved for postconviction relief

---

postconviction relief until August 3, 2019, it related back to the date on which he filed the original Rule 3.850 motion (January 16, 2019) because the trial court granted him leave to file a compliant Rule 3.850 motion and he did so. *See Bates v. Sec'y, Dep't of Corr.*, 964 F.3d 1326, 1328 (11th Cir. 2020) ("[T]he one-year limitations period tolled the day a petitioner filed a procedurally noncompliant Rule 3.850 motion *if* he was permitted to and did later file a compliant motion." (emphasis in original)); *Green v. Sec'y, Dep't of Corr.*, 877 F.3d 1244, 1248 (11th Cir. 2017) ("Under Florida law, when a postconviction motion is stricken with leave to amend, the amended motion relates back to the date of the original filing." (citations omitted)).

The postconviction court denied the Rule 3.850 motion on August 21, 2019. (Doc. 9-2, App. 17.) Barnes did not appeal that order. (*See* Doc. 1, p. 2 (Barnes stating he did not appeal the denial of his Rule 3.850 motion).) Thus, Barnes's motion for postconviction relief tolled the limitations period from January 16, 2019, until September 20, 2019, when the 30-day period to appeal the trial court's order expired. *Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006) (an application for postconviction relief remains pending until the time to seek appellate review expires if a petitioner does not file a notice of appeal). He does not assert that he filed any other applications for postconviction relief in state court. Barnes, through counsel, filed the federal habeas petition on December 27, 2019, 98 days after the AEDPA's limitations period resumed running. Altogether, it appears that 232 days of un-tolled time passed between the date on which Barnes's conviction and sentence became final and the date on which he filed his federal habeas petition, which would render the petition timely under § 2244(d)(1)(A).

under Florida Rule of Criminal Procedure 3.850. (Doc. 9-2, App. 14; App. 16; App. 17.)
He did not appeal the state postconviction court's denial of relief. (Doc. 1, p. 2.)

### B. Factual Background

On July 2, 2016, Barnes got into a domestic dispute with E.C., his fiancée and his child's mother. (Doc. 1, p. 2; Doc. 9-1, App. 2, pp. 6, 15.) A few minutes after the victim returned home from work, Barnes arrived home and an argument ensued about the victim turning on the lights. (Doc. 9-1, App. 2, p. 6.) Barnes struck the victim in the face. (*Id.*, pp. 6, 15.) The victim tried to get away, but Barnes threw her to the floor in the kitchen, held her down, and penetrated her vagina with his fingers several times. (*Id.*) "[A]t one time he began to grab [the victim] from behind and to lift and jack her up and down on his hands in front of their … [then] nine to ten-year-old son." (*Id.*, p. 15.) The son—H.B.––video recorded most of the incident on his cell phone. (*Id.*, p. 6.)[2]

H.B. gave police a brief written statement, in which he said his father had kicked his mother once or twice in the mouth, put his hand around her neck, slapped her, "and shoved his hand up her crotch." (Doc. 9-2, App. 20.) Days later, in a statement to a case coordinator from the State Attorney's Office, H.B. clarified that he did not personally "see

---

[2] At least two children were members of the household: C.S. (the victim's biological son) and H.B. (the son of Barnes and the victim). (*See* Doc. 9-1, App. 9, p. 18.) Although the name of the child witness is redacted in court records, Barnes states (and Respondents do not dispute) that H.B. is the son who witnessed and recorded the incident on his cell phone. (*See* Doc. 1, pp. 5, 8.)

where [Barnes] shoved his hand up [the victim's] crotch." (Doc. 9-1, App. 5, ECF p. 59.)

Rather, he learned that detail because his mother had told him about it. (*Id.*, ECF p. 60.)

Barnes was arrested and eventually charged by an Amended Information with one count of sexual battery, one count of simple battery, and two counts of violating the conditions of pretrial release. (Doc. 9-1, App. 1.) Edward Spaight, a public defender, initially represented Barnes. On January 30, 2017, as the parties convened for jury selection, Mr. Spaight moved for a continuance because the victim had been deposed three days earlier. (*Id.*, App. 2, p. 4.) The judge asked if the victim had any "prior criminal history that would be the subject of a challenge or otherwise for felonies or misdemeanors," and one prosecutor said the victim had none. (*Id.*) Mr. Spaight interjected that "there is a history of violence … by her against him," (*id.*), evidently referring to a 2013 arrest affidavit against the victim for domestic battery, (*see* Doc. 9-1, App. 5, ¶ 6). Mr. Spaight said Barnes wanted to explore a possible self-defense theory based on the "history of violence by [the victim] against [Barnes]." (*Id.*, App. 2, p. 5.) The judge asked Mr. Spaight whether the victim was the last witness who needed to be deposed. (*Id.*) Mr. Spaight responded that "[s]he was the last listed state witness that we hadn't deposed except for the son," whom the court had stricken as a witness. (*Id.*)[3] Mr. Spaight stated that discovery had been

---

[3] It is unclear which son was stricken as a witness: H.B.—who was in the home and recorded the incident on a cell phone—or C.S., the victim's biological son, who is not believed to have been a witness. (*See* Doc. 9-1, App. 9, p. 18; App. 10, p. 17 n.4.) Although it appears to have been H.B., it is not clear from the record.

provided and that he had shared it with Barnes. (Doc. 9-1, App. 2, p. 7.) After going through a list of factors that Florida law requires a judge to consider in deciding whether to grant a continuance, the judge denied the motion to continue. (*Id.*, pp. 4–8.)

The case was passed and recalled at 8:52 a.m. (*Id.*, p. 8.) The judge called the attorneys to the bench and held a brief discussion with them. (*Id.*, pp. 8–9.) Mr. Spaight advised the judge that Barnes was "[t]alking to his family about a potential plea." (*Id.*, p. 9.) The judge asked Mr. Spaight if he wanted "at least five minutes," to which Mr. Spaight responded, "Yeah, probably." (*Id.*) The judge agreed to give Barnes five minutes and concluded the discussion. (*Id.*)

The case was passed and not recalled again until 10:01 a.m., a little over an hour later. (*Id.*) Mr. Spaight announced that Barnes intended to plead no contest to all pending charges, provided his sentence would be capped at ten years' imprisonment. (*Id.*, p. 10.)[4] The court put Barnes under oath, (*id.*, p. 11), and questioned him about his decision to plead no contest, (*id.*, pp. 11–23). The prosecutor read the factual basis aloud and advised Barnes that the cumulative maximum penalty for all charges was 35 years in prison, (*id.*, pp. 15–16), although Barnes's prison sentence was to be capped at ten years under the plea deal, (*id.*, pp. 13, 20). The court asked about Barnes's competence to change his plea, (*id.*,

---

[4] Along with the charges of sexual battery, battery, and violating the conditions of pretrial release in Case Number 2016–CF–651, Barnes also had pending charges for commercial fishing violations in four other cases: Case Numbers 2015–CF–943, 2015–CF–827, 2015–CF–491, and 2015–CF–361. (*Id.*, pp. 15–16.) Barnes's plea of no contest resolved all the charges. He does not challenge his convictions and sentences for the commercial fishing violations.

pp. 11–14, 25), and advised him of the rights he waived by pleading no contest, including the right to present any defenses, (*id.*, pp. 18–20). Barnes stated that he understood the rights he was waiving. (*Id.*, pp. 19–20.) He denied that anyone had threatened, forced, or coerced him to plead no contest, (*id.*, p. 13), and confirmed that he had discussed the plea with his lawyer and his family, (*id.*, p. 17). He also affirmed that he had answered the court's questions truthfully. (*Id.*) After the court advised Barnes about other matters, Barnes maintained that he wanted the court to accept his plea, and the court did so. (*Id.*, p. 23.) Mr. Spaight advised the court that Barnes was prepared to contest the accusations at trial, but his plea was in his "best interest given the potential liability on these matters." (*Id.*, p. 25.) The court set sentencing for the afternoon of February 23, 2017, before concluding the hearing. (*Id.*, p. 24.)

About a week before sentencing, Barnes retained a new attorney, J. Christopher Carver, who filed a notice of appearance on February 17, 2017. (Doc. 9-1, App. 4.)[5] That same day, Mr. Carver moved to continue sentencing, arguing that Barnes had grounds to seek withdrawal of his plea and that extra time was necessary to prepare such a motion. (Doc. 9-2, App. 18.) On the morning of the sentencing hearing—February 23, 2017— Barnes (through Mr. Carver) moved to withdraw his plea. (Doc. 9-1, App. 5.) Barnes argued that (i) he did not know his son had made a statement in which the son clarified he

---

[5] Mr. Carver represented Barnes through sentencing, direct appeal, and his state postconviction proceedings. Mr. Carver also represents Barnes in this federal habeas proceeding.

did not personally see a sexual battery, (*id.*, ¶ 2)[6]; (ii) he saw the cell phone video of the incident only "moments" before changing his plea, which in Barnes's opinion did not show a sexual battery, (*id.*, ¶ 2); (iii) he was unaware "that he had no prior history of violence against the alleged victim in the case … and that [the victim] had a previous history of battering the Defendant, [which] could have been relied upon to form a self-defense theory to the battery charges," (*id.*, ¶ 3); (iv) the victim had an ulterior motive for "bringing false charges," which was to relocate to Texas with her and Barnes's son without Barnes's consent, (*id.*, ¶ 4); (v) Barnes did not have enough time to review the victim's deposition or investigate her alleged history of violence, (*id.*, ¶ 5), and when the court asked about the victim's criminal history on the morning of the change-of-plea hearing, the State failed to say that the victim had been arrested for domestic battery in 2013, (*id.*, ¶ 6); and (vi) the judge was misinformed about whether every witness had been deposed, where the judge "erroneously opined that he had already stricken [H.B.] as a witness," but it was Barnes's "belief" that the court had actually stricken a different son as a witness, (*id.*, ¶ 7). In sum, Barnes argued that he had good cause under Florida law to withdraw his plea because he lacked enough time to consider his plea and his plea "was entered involuntarily due directly to the incomplete and faulty assessment of Defense Counsel and the State." (*Id.*, ¶¶ 8–13.)

---

[6] Barnes attached a copy of the son's statement to the case coordinator to his Motion to Withdraw. (*Id.*, ECF pp. 47–78.)

At the hearing on February 23, 2017, the court first addressed Barnes's motion to continue sentencing. (Doc. 9-1, App. 8, pp. 6–21.) In support of continuing the sentencing hearing, Mr. Carver argued that Barnes needed more time to investigate the victim's alleged history of violence and the son's statement to the case coordinator. (*Id.*, pp. 6–13.) The State argued that none of the evidence Barnes relied on to support his motion to continue was new because "[t]hey had all of this information from the very beginning." (*Id.*, p. 14.) After hearing additional argument and consulting the transcript of the change-of-plea hearing (at which the court denied a previous request to continue), the court denied the motion to continue sentencing. (*Id.*, pp. 15–21.)

The court then took up Barnes's motion to withdraw the plea. (*Id.*, pp. 28–76.) Barnes went under oath and testified. (*Id.*, pp. 35–58.) He said Mr. Spaight did not advise him that his son had "recant[ed]" the statement about seeing Barnes sexually batter the victim. (*Id.*, p. 36; *see also id.*, pp. 55–56.) According to Barnes, learning that his son did not personally witness a sexual battery changed his mind about his decision to plead no contest. (*Id.*, pp. 40–41.) Barnes admitted that he had watched the cell phone video of the incident a couple of days before changing his plea, but in his opinion, the video did not depict a sexual battery. (*Id.*, pp. 36–37.) Barnes also recalled that he received a transcript of the victim's deposition at 8:30 a.m. on the morning he pleaded no contest but said he did not get to read it. (*Id.*, p. 38.) Barnes claimed he had not been told that the victim had

given three different stories, supposedly stating "it happened in the bedroom, then it was in the kitchen, then it was in the foyer." (*Id.*, p. 41.)[7] According to Barnes, he also advised Mr. Spaight and his investigator that he had been a victim of domestic violence, but they did not depose witnesses to those episodes or investigate the victim's 2013 arrest for domestic battery because they told Barnes it would not matter. (Doc. 9-1, App. 8, pp. 39–40.) Barnes testified that he had only five to seven minutes to consider the plea offer, (*id.*, p. 41), and that he would not have pleaded no contest had he known all the information, (*id.*, pp. 41–42).

On cross-examination, Barnes admitted he had watched the cell phone video of the incident two days before pleading no contest. (*Id.*, p. 42.) He also admitted that the video, which the State put into evidence, was an accurate depiction of the portion of the video he viewed before changing his plea. (*Id.*, p. 51.) Barnes admitted that the video shows him with his hand on the victim's behind and the victim "being moved up and then down." (*Id.*, p. 43.) The State showed Barnes a still shot from the video, which Barnes also admitted was an accurate depiction. (*Id.*, p. 50.) Barnes knew that the victim maintained in her deposition that he put his fingers into her vagina, (*id.*, p. 44), and he admitted he had

---

[7] In her deposition, the victim testified that the argument started in the living room, (Doc. 9-2, App. 19, p. 8,) where Barnes "smacked [her] upside the head," (*id.*, p. 9). She then walked away to the kitchen, where Barnes threw her to the ground. (*Id.*, pp. 9–10.) In the kitchen, Barnes turned the victim onto her stomach and "put his fingers inside of [her] vagina, repeatedly" without her consent. (*Id.*, pp. 10–11.) After that, the victim ran toward the bathroom and into the bedroom, where Barnes pushed her into a closet door and kicked her in the chin. (*Id.*, p. 12.) The victim then fled with her son into a car in the driveway and locked the doors until police arrived. (*See id.*)

agreed with the factual basis at the change-of-plea colloquy, (*id.*, pp. 45–46). He also admitted saying that he was satisfied with his attorney's services when he pleaded no contest but testified he was not "in [his] right state of mind." (*Id.*, p. 46.) On re-direct, Barnes testified that he thought his son's statement—where the son clarified he did not personally see Barnes put his fingers into the victim's "crotch"—was a "recantation." (*Id.*, pp. 57–58.) Mr. Carver read that portion of the son's statement into the record. (*Id.*, pp. 63–64.)

Reiterating the points raised in the motion to withdraw the plea, Mr. Carver argued that Barnes had shown good cause to withdraw his plea because the plea was "unknowing and unconsented." (*Id.*, pp. 65–66.) The State countered that Barnes had ample opportunity to consult his attorney and family before taking the plea deal and that the transcript of the plea colloquy showed that Barnes's decision was knowing and voluntary. (*Id.*, pp. 67–68.) The State argued that, before he changed his plea, Barnes had an opportunity to watch the cell phone video, a still shot of which "clearly" showed "that [Barnes's] finger was in [the victim's] vagina; she had been penetrated." (*Id.*, p. 68.) The State also argued that Barnes wanted to withdraw his plea and go to trial only because he had learned that the victim had left for Texas, and he did not think she would return to testify against him at a trial. (*Id.*)

The court denied Barnes's motion to withdraw the plea. (*Id.*, pp. 68–76.) After reviewing the transcript and listening to the audio recording of the change-of-plea hearing, the court observed there had been three breaks in the proceedings before Barnes entered his plea. (*Id.*, pp. 69–70.) Based on Barnes's statements during the change-of-plea colloquy, and the court's finding that Barnes's testimony at the hearing on the motion to withdraw the plea was not credible, the court concluded Barnes had failed to show good cause to withdraw his plea. (*Id.*, pp. 70–76.)

Turning to sentencing, the court and the parties watched the audio-video recording from the son's cell phone. (*See id.*, pp. 83–84.) The State then read the victim's statement into the record. (*Id.*, pp. 85–89.) While Barnes argued that the video did not show a sexual battery, (*id.*, pp. 102–04), the judge rejected that argument:

> Looking at the video, although it was not a particularly long video, it's almost unheard of to have a – a rape – that's what it is – a rape caught on tape.
>
> And this is, Mr. Barnes, probably the classic example that – people don't understand about rape. Rape is – it's – it's inferentially a crime – a sex crime. It's inferentially a sex crime.
>
> But most importantly, rape is a crime of violence. It's a crime of anger. It's a crime of domination. All of which was shown on that brief video from the time of the first punch until the time that you're violating the most intimate parts of the human body with your fingers on video. You can see it.

11

(*Id.*, pp. 107–08.) The court sentenced Barnes to ten years in prison on the sexual battery conviction and concurrent terms of five years in prison on each of the commercial fishing violations. (*Id.*, pp. 108–09.)[8]

Barnes appealed his conviction and sentence, arguing that the trial court abused its discretion by refusing to allow him to withdraw his plea of no contest. (Doc. 9-1, App. 9.) The State answered that the trial court appropriately denied Barnes's motion to withdraw the plea. (*Id.*, App. 10.) On June 5, 2018, the Fifth District Court of Appeal ("DCA") per curiam affirmed Barnes's conviction and sentence. (*Id.*, App. 12.) Barnes did not petition the Supreme Court of the United States for certiorari review.

On January 16, 2019, Barnes, through Mr. Carver, moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 9-2, App. 14.) He argued that his first attorney, Mr. Spaight, had given ineffective assistance by failing to investigate or advise him of all the facts relevant to his decision to plead no contest. The trial court dismissed the motion without prejudice because it was unsigned and did not satisfy Rule 3.850(c)'s oath requirement. (*Id.*, App. 15.) Barnes, through Mr. Carver, filed a signed Rule 3.850 motion on August 3, 2019, (*id.*, App. 16), which related back to the original Rule 3.850 motion, *see Bates*, 964 F.3d at 1328. The trial court denied the Rule 3.850

---

[8] The court did not announce a sentence for the charges of simple battery and violating the conditions of pretrial release in Case Number 2016–CF–651.

motion on the merits without an evidentiary hearing. ( Doc. 9-2, App. 17.) Barnes did not

appeal the denial of postconviction relief. (Doc. 1, p. 2.) These federal habeas proceedings

followed.

## II.   STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this

proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief

under the AEDPA can be granted only if a petitioner is in custody "in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of

the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction

on a claim that his conviction was obtained in violation of the United States Constitution

is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir.

2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim

adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied by reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioners factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner manages to rebut the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in

state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" without the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

17

III.   **INEFFECTIVE ASSISTANCE OF COUNSEL**

Barnes brings a claim for ineffective assistance of trial counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not

whether a federal court believes the state court's determination' under the *Strickland*

standard 'was incorrect but whether that determination was unreasonable—a substantially

higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on

claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and

§ 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly

so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.   ANALYSIS

### A. Ground One

Barnes alleges that his first attorney, Edward Spaight, was ineffective because he

failed to advise Barnes of exculpatory facts and failed to depose key witnesses before Barnes

pleaded no contest. (Doc. 1, pp. 2–7.) Barnes contends that Mr. Spaight did not inform

him that his son, H.B., had purportedly "recanted his original statement to law

enforcement," (*id.*, p. 3), when he clarified in a later statement that he "didn't see where

[Barnes] shoved his hand up [the victim's] crotch," (*id.*, p. 5.) H.B. explained that he

learned about that fact only because his mother told him so. Barnes alleges that Mr. Spaight

led him to believe H.B. would testify against him. (*Id.*) Barnes asserts that he was also unaware of the victim's deposition and its contents, including that the victim had purportedly given three versions of the incident. (*Id.*, pp. 4, 7.) According to Barnes, he had only minutes to decide whether to accept the State's plea offer. (*Id.*, p. 6.) He contends that, contrary to Mr. Spaight's belief that every prosecution witness had been deposed, H.B. had not been deposed, despite being the only witness to the incident besides Barnes and the victim. Barnes argues that Mr. Spaight was mistaken in his belief that H.B. had been stricken as a witness because it was the other son, C.S., who had been stricken. (*Id.*, p. 5.) And Barnes alleges he did not know that the victim had a history of violence against him, including a prior arrest for domestic battery in St. Johns County, Florida, which Mr. Spaight failed to investigate. (*Id.*, pp. 5–6, 7.) Barnes argues he would not have entered a plea and would have gone to trial but for Mr. Spaight's failure to inform him of the exculpatory facts, depose key witnesses, and inform him of available defenses. (*Id.*, p. 7.)

Respondents argue this claim is unexhausted. (Doc. 9, pp. 12–14.) To the extent Barnes raised similar facts in his motion to withdraw the plea and in his briefs on direct appeal, Respondents argue that Barnes did not fairly present a Sixth Amendment ineffective assistance claim because neither the motion to withdraw the plea nor the brief engaged in a Sixth Amendment analysis. (*Id.*, pp. 12–13.) Respondents also argue that "generally, the procedurally correct manner of raising an ineffectiveness claim in Florida is

not via direct appeal" but in a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, p. 13.) To the extent Barnes raised the same ineffective assistance claim in his Rule 3.850 motion, Respondents argue that Barnes failed to exhaust his state remedies because he did not appeal the denial of the Rule 3.850 motion, believing that an appeal would be "fruitless." (*Id.*, pp. 13–14 (citing Doc. 1, p. 2).) Respondents also argue that the claim fails on the merits because the state court record shows that Barnes knowingly and voluntarily pleaded no contest, aware of all the facts, and that he had ample opportunity to discuss the plea deal with his family and attorney. (*Id.*, pp. 22–28.)

Barnes replies that he exhausted this claim because "the facts relied on in the instant § 2254 petition are identical to those presented in [Barnes's] state court pleadings" and because "those facts were presented to the highest available state court for review prior to [Barnes] filing his § 2254 petition." (Doc. 12, pp. 6–7; *see also id.*, pp. 7–10.) He argues that "[a] habeas petitioner need not spell out each syllable of his claim before the state courts in order to satisfy the exhaustion requirement of § 2254," as long as "the substantial equivalent of a petitioner[']s federal habeas claim has been argued in the state proceedings." (*Id.*, p. 7.) Barnes also argues that because "the trial court consistently declined to grant continuances requested by the undersigned to properly move to withdraw [Barnes's] plea and present evidence to argue the motion before the trial court," the "record lack[s] critical defense evidence in support of its review before this Court." (*Id.*) And Barnes opposes

Respondents' argument that his direct appeal was not a proper vehicle to raise an ineffective assistance claim. He argues that under Florida law, "[t]here are rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record." (*Id.*, p. 9 (citing, *e.g.*, *Stewart v. State*, 420 So. 2d 862 (Fla. 1982)).) According to Barnes, because his initial brief on direct appeal "stated that counsel's assistance was ineffective and it is clear that the Petitioner's request to withdraw his plea was based on the deficient performance of counsel," he fairly presented the substance of his ineffective assistance claim on direct appeal. (*Id.*, pp. 9–10.) He also maintains that his claim has merit. (*Id.*, pp. 10–16.)

Barnes failed to exhaust this claim. The Court explains why neither Barnes's direct appeal nor his Rule 3.850 motion satisfied § 2254(b)'s exhaustion requirement.

### 1. The direct appeal

In his presentence motion to withdraw the plea (Doc. 9-1, App. 5) and briefs on direct appeal (*id.*, App. 9; App. 11), Barnes raised many of the same factual allegations that are in his federal habeas petition, including that his first attorney did not advise him about H.B.'s follow-up statement to a case coordinator and that Barnes was unaware of the victim's alleged history of domestic violence. That said, neither the motion to withdraw the plea nor the briefs on direct appeal fairly presented a Sixth Amendment ineffective assistance claim to the state courts. That is so for three reasons.

*First*, Barnes did not alert the state courts that his motion to withdraw the plea or direct appeal raised an ineffective assistance of counsel claim under the Sixth Amendment. "[F]ederal courts require a petitioner to present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270 (11th Cir. 2015) (quoting *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)). Contrary to Barnes's argument that he exhausted the ineffective assistance claim by presenting the same supporting facts in his briefs on direct appeal, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citation omitted). Rather, "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a *specific federal constitutional guarantee*." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) (emphasis added).

Nowhere in his motion to withdraw the plea (Doc. 9-1, App. 5) or briefs on direct appeal (*id.*, App. 9; App. 11) did Barnes discuss or mention the Sixth Amendment to the United States Constitution, *Strickland v. Washington* or that case's standard, or any federal case law. Nor did he even label his claim as "federal." *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (suggesting in dicta that a habeas petitioner could alert a state court to the federal legal basis of his claim by labeling the claim "federal"). Barnes's sole argument on direct

appeal was that he had established "good cause" to withdraw his plea of no contest under

Florida Rule of Criminal Procedure 3.170(f), such that the trial court abused its discretion

by denying his presentence motion to withdraw the plea. (Doc. 9-1, App. 9, pp. 13–23.)

To support that argument, Barnes relied entirely on state case law and the Florida Rules of

Criminal Procedure. (*See id.*, p. 3 (Table of Authorities).) Of the twelve state court cases

Barnes cited in his appellate briefs, only *Altersberger v. State*, 216 So. 3d 621 (Fla. 2017),

discussed ineffective assistance under *Strickland*. But *Altersberger* did not discuss ineffective

assistance of counsel as "good cause" to withdraw a plea; instead, *Altersberger* analyzed

whether an attorney was ineffective for failing to advise the defendant "about the different

legal standard that applies to a motion to withdraw a guilty plea depending on whether the

motion is made prior to or after sentencing." *Id.* at 625; *see also id.* at 625–28. And Barnes

did not even cite that part of *Altersberger*. Rather, Barnes provided only a general citation

to *Altersberger* for the proposition that "[u]pon a showing of good cause the trial court has

no discretion and is required to grant a withdrawal of the plea." (Doc. 9-1, App. 9, p. 13;

*see also id.*, App. 11, p. 8.) Thus, Barnes's appellate briefs failed to alert the state appellate

court that he was raising a claim of ineffective assistance of counsel under the Sixth

Amendment.

　　　True, in his 24-page initial brief, Barnes used the words "ineffective" or "ineffective

assistance" three times to describe Mr. Spaight's performance. (*Id.*, App. 9, pp. 5, 18, 22;

*see also id.*, App. 11, p. 10.) Barnes argued that Mr. Spaight's advice did not satisfy Florida Rule of Criminal Procedure 3.171(c) and contributed to his decision to plead no contest. (*See id.*, App. 9, pp. 14–16, 18–20.) But these were mixed in with arguments that the State also influenced Barnes's decision to plead no contest by misrepresenting the victim's criminal history, (*id.*, pp. 17–18, 19), and that the trial court abused its discretion, (*id.*, pp. 20–21). As the Eleventh Circuit has noted,

> [T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.

*Kelley*, 377 F.3d at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). Barnes's scattered references on direct appeal to Mr. Spaight's purported ineffectiveness, in the context of arguing that the trial court erred by refusing to allow him to withdraw his plea, did not "face-up and squarely" present a "plainly defined" federal ineffective assistance claim. *Id.*; *see also Taylor v. Sec'y, Dep't of Corr.*, 507 F. App'x 887, 891–92 (11th Cir. 2013)[9] ("[F]or purposes of exhaustion of state remedies, a substantive claim is 'separate and distinct' from an ineffective assistance of counsel claim based on the substantive claim.").[10]

---

[9] The Court cites unpublished opinions where it finds the reasoning to be persuasive, recognizing they are not binding. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); Fed. R. App. P. 32.1.

[10] For that matter, the appellee's brief on direct appeal did not engage in an ineffective assistance analysis either, (*see* Doc. 9-1, App. 10, pp. 13–21), reflecting that the State did not understand Barnes to be raising an ineffective assistance claim.

And notably, "good cause" to withdraw a plea under Florida Rule of Criminal Procedure 3.170(f) does not require a finding that the defendant's attorney was ineffective under *Strickland*. Rather, good cause to withdraw a plea exists under Florida law whenever "the plea is infected by misapprehension, undue persuasion, ignorance, or was entered by one not competent to know its consequence or that it was otherwise involuntary, or that the ends of justice would be served by withdrawal of such plea." *Johnson v. State*, 947 So. 2d 1208, 1210 (Fla. 5th DCA 2007) (quotation marks and citation omitted). Thus, Barnes's sole argument on direct appeal—that the trial court abused its discretion by refusing to allow him to withdraw the plea because he had shown good cause to do so under Florida law—did not necessarily raise an ineffective assistance claim by implication.

Barnes made only one general reference to federal law in his initial brief, which was this sentence in the "Conclusion" section: "The Appellant asserts that the judgment and sentence in this matter were the product of the *Trial Court's* failure to properly apply Florida law and failure to afford Appellant due process of law as guaranteed by the Florida and United States Constitutions." (Doc. 9-1, App. 9, p. 21 (emphasis added).) So, to the extent Barnes invoked federal law at all, it was to argue that the trial court had denied him due process, not that counsel had deprived him of the right to the effective assistance of counsel. And "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of" a federal constitutional claim in state court. *Gray*,

518 U.S. at 163. Thus, Barnes's motion to withdraw the plea and briefs on direct appeal did not alert the state courts that he was raising an ineffective assistance claim under the Constitution.

*Second*, even if Barnes had fairly alerted the state courts that he was raising a federal ineffective assistance claim on direct appeal, the exhaustion doctrine requires that a petitioner present his claims to the state court in a procedurally correct manner. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (raising a claim "in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor' … does not, for the relevant purpose, constitute 'fair presentation.'" (citations omitted)). "With rare exceptions, ineffective assistance of trial counsel claims are not cognizable on direct appeal" in Florida. *Morris v. State*, 909 So. 2d 428, 433 (Fla. 5th DCA 2005). Instead, "[t]hey should normally be raised on a motion for post-conviction relief in the trial court where the issues of counsel's incompetence and ineffectiveness can be fully developed, if necessary, after an evidentiary hearing." *Id.* (citation omitted). "On rare occasions, the appellate courts make an exception to this rule when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable." *Corzo v. State*, 806 So. 2d 642, 645 (Fla. 2d DCA 2002). Barnes contends his appellate briefs satisfied this "rare" exception. (Doc. 12, p. 9.) But the state appellate court per curiam affirmed Barnes's conviction and

sentence, which shows that the court did not find any ineffectiveness to be so "obvious on the face of the appellate record," *Corzo*, 806 So. 2d at 645, that an ineffective assistance claim was cognizable on direct appeal.[11]

*Third*, but not least, Barnes's own Rule 3.850 motion contradicts his current argument that he raised his ineffective assistance claim on direct appeal. In the Rule 3.850 motion, Barnes alleged that he pleaded no contest because of the ineffective assistance of counsel. (Doc. 9-2, App. 16.) He explicitly said he had *not* raised this claim on direct appeal, writing: "The grounds presented above were not previously presented on Defendant's direct appeal because these issues were not properly preserved and could not have been raised at that time." (*Id.*, p. 8.) That statement is especially notable because the same attorney, Mr. Carver, wrote both the Rule 3.850 motion and the briefs on direct appeal (plus the current habeas petition).

Thus, Barnes did not fairly present his ineffective assistance claim on direct appeal.

### 2.   *The Rule 3.850 motion*

Unlike his motion to withdraw the plea and briefs on direct appeal, Barnes's Rule 3.850 motion squarely presented a claim that the ineffective assistance of counsel caused him to plead no contest. (Doc. 9-2, App. 16.) The trial court recognized that Barnes raised

---

[11] The record on direct appeal contained no findings by the trial court about whether Mr. Spaight's performance was deficient or prejudicial under *Strickland*. Nor did the record contain Mr. Spaight's testimony about his advice to Barnes because, even though Mr. Spaight was in the courtroom during the hearing on the motion to withdraw the plea, (*see* Doc. 9-1, App. 8, p. 12), Barnes did not question him.

an ineffective assistance claim and denied it on the merits (without an evidentiary hearing). (*Id.*, App. 17.) But Barnes did not appeal the denial of the Rule 3.850 motion because he considered an appeal to be "fruitless." (Doc. 1, p. 2.)

To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Because Barnes did not appeal the denial of his Rule 3.850 motion, he did not complete a full round of the State's established appellate review process. As a result, he failed to give the State courts a fair opportunity to resolve his ineffective assistance claim through the postconviction proceedings.

### 3. *The ineffective assistance claim is now procedurally defaulted*

Barnes's ineffective assistance claim is technically exhausted in that "there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). But because Barnes "has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith*, 256 F.3d at 1138 (citations omitted). Barnes cannot return to state court to present the ineffective assistance claim in a second direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition

of sentence). Nor can he file a belated appeal from the denial of his Rule 3.850 motion. *See* Fla. R. App. P. 9.141(c)(5)(A) (providing generally that "[a] petition for belated appeal shall not be filed more than 2 years after the expiration of time for filing the notice of appeal from a final order").

Barnes does not allege facts showing he can overcome the procedural default under the actual innocence or cause-and-prejudice exceptions. But he suggests he did not have to exhaust his state remedies because it would have been "fruitless" to appeal the denial of the Rule 3.850 motion. (Doc. 1, p. 2.) Barnes does not elaborate on that statement in his habeas petition, but he argues in his reply:

> It should be noted … that the trial court consistently declined to grant continuances requested by the undersigned to properly move to withdraw Petitioner's plea and present evidence to argue the motion before the trial court. The result of the state court's rush to justice is a record lacking critical defense evidence in support of its review before this Court.

(Doc. 12, p. 7.)

Under § 2254(b)(1), a petitioner may be excused from the exhaustion requirement if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(1)(B). Barnes's conclusory assertion that it would have been "fruitless" to appeal the denial of his Rule 3.850 motion, (Doc. 1, p. 2), is inadequate to show "an absence of available State

30

corrective process" or that the process would have been "ineffective to protect the rights of the applicant." Indeed, the Supreme Court has disapproved of a "futility" exception to the exhaustion requirement, stating that a habeas petitioner "may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid." *Engle v. Isaac*, 456 U.S. 107, 130 (1982) (footnote omitted).

Likewise, Barnes's argument that the trial court prevented him from developing a record because it denied his motions for a continuance is just as unavailing. (*See* Doc. 12, p. 7.) That argument fails to explain why Barnes could not have at least briefed a federal ineffective assistance claim on direct appeal. Nor does it explain why he did not appeal the denial of his Rule 3.850 motion, in which he could have argued that the trial court erred by denying his ineffective assistance claim without an evidentiary hearing. Accordingly, Barnes fails to show he can avoid the procedural default of Ground One.

**B. Ground Two**

Barnes alleges that his conviction and sentence resulted from "the Trial Court's failure to properly apply Florida law and failure to afford [Barnes] due process of law as guaranteed by the Florida and United States Constitutions." (Doc. 1, p. 8; *id.*, pp. 8–9.) He asserts that he "was not made aware of key exculpatory evidence that existed, which alone should be deemed good cause to withdraw his plea prior to sentencing." (*Id.*, p. 8.)

First, Barnes argues that "[t]he State's affirmation to the Trial Court that no history of violence existed concerning the alleged victim was proven to be a misstatement of the facts that may have caused the Trial Court to deny the defense[']s request to continue the case for further investigation." (*Id.*) Second, Barnes contends that "the alleged striking of [H.B.] by Mr. Spaight as a witness when [H.B.] was the sole material eye witness to the incident … would tend to support an ineffective assistance of counsel claim on the face of the record." (*Id.*)[12] Third, Barnes argues that "the State's failure to question Mr. Spaight as a witness," presumably at the hearing on the motion to withdraw the plea, "left these allegations unrefuted and therefore deemed true and if true would constitute good cause to allow withdrawal of the plea." (*Id.*, p. 9.) Finally, Barnes argues that the State's evidence would have been insufficient "to form a prima facie case of guilt and would make a verdict in the State's favor unlikely at best." (*Id.*) Barnes argues that a presentence motion to withdraw the plea must be liberally construed because the law favors a trial on the merits, "the Trial Court abused its discretion," and "in the interest of justice" this Court should "vacate the Judgment and Sentence and remand for a trial on the merits." (*Id.* (citing *Rappaport v. State*, 24 So. 3d 1211, 1213 (Fla. 4th DCA 2009).)

---

[12] This allegation is confusing because elsewhere, Barnes asserts that the other son, not H.B., was stricken as a witness. (*Id.*, p. 5.) In any event, as explained in relation to Ground One, Barnes procedurally defaulted his ineffective assistance claim.

Respondents correctly argue that Barnes's claim is unexhausted because he did not fairly present a federal due process claim on direct appeal. (Doc. 9, pp. 14–15.)[13] Barnes's only argument on direct appeal was that the trial court abused its discretion by denying his motion to withdraw the plea under Florida Rule of Criminal Procedure 3.170(f). (Doc. 9-1, App. 9, pp. 13–23.) To support that argument, Barnes relied entirely on state case law, the Florida Rules of Criminal Procedure, and Florida's "good cause" standard for withdrawing a plea before sentencing. (*See id.*, pp. 3, 13–23; Doc. 9-1, App. 11, pp. 3–14.) Barnes did not discuss any federal due process standard or cite the Fourteenth Amendment, any other specific provision of the United States Constitution, or any federal case law. And none of the state court cases cited in Barnes's briefs discussed due process under the United States Constitution in relation to a plea.

Under Florida Rule of Criminal Procedure 3.170(f), a "court may in its discretion, and shall on good cause, at any time before a sentence, permit a plea of guilty or no contest to be withdrawn." Fla. R. Crim. P. 3.170(f). Florida's "good cause" standard is satisfied

---

[13] It is not even clear that Barnes presents a federal due process claim here. Ground Two reads like a restatement of his claim that the trial court abused its discretion under Florida Rule of Criminal Procedure 3.170(f) by denying his motion to withdraw the plea, not that his plea violated the Due Process Clause of the Fourteenth Amendment. (*Compare* Doc. 1, pp. 8–9 *with* Doc. 9-1, App. 9, pp. 21–23.) And a claim that the trial court erred under Florida law in adjudicating a motion to withdraw the plea is not cognizable on federal habeas review. *Tuomi v. Sec'y, Fla. Dep't of Corr.*, 980 F.3d 787, 796 n.9 (11th Cir. 2020) (citations omitted); *see also Stewart v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-251-TJC-MCR, 2021 WL 857158, at *7 (M.D. Fla. Mar. 8, 2021) (concluding that petitioner's claim that the trial court erred by denying his motion to withdraw the plea under Rule 3.170(f), even if couched in terms of equal protection and due process, was not cognizable on federal habeas review).

"when the plea is infected by misapprehension, undue persuasion, ignorance, or was entered by one not competent to know its consequence or that it was otherwise involuntary, or that the ends of justice would be served by withdrawal of such plea." *Johnson*, 947 So. 2d at 1210 (quotation marks and citation omitted). This "good cause" standard is more permissive than the "manifest injustice" standard that applies to a post-sentencing motion to withdraw a plea. *See State v. Partlow*, 840 So. 2d 1040, 1042 (Fla. 2003) (contrasting the "good cause" and "manifest injustice" standards). For example, in *Graham v. State*, a Florida appeals court held that good cause existed to allow a defendant to withdraw his plea of no contest, before sentencing, where his attorney mistakenly advised him that his photo would not be put on the internet. 779 So. 2d 604, 605 (Fla. 2d DCA 2001). And in *State v. Braverman*, a Florida appeals court said that newly discovered evidence might establish good cause for a defendant to withdraw his plea if the new evidence "raises a substantial question as to the guilt or innocence of the defendant." 348 So. 2d 1183, 1188 (Fla. 3d DCA 1977). But the federal due process standard for setting aside a state court plea is different: "'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir.

1980) (en banc)).[14] Even if there is some overlap between Florida's "good cause" standard to withdraw a plea before sentencing and the federal due process standard to set aside a plea, "a petitioner [does] not satisfy the exhaustion requirement merely by presenting the state court with 'all the facts necessary to support the claim,' or by making a 'somewhat similar state-law claim.'" *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351–52 (11th Cir. 2012) (quoting *Kelley*, 377 F.3d at 1343–44). Thus, Barnes's argument that the trial court erred under Florida law by denying his presentence motion to withdraw the plea did not present a federal due process claim. *Thomas v. Sec'y, Dep't of Corr.*, No. 17-11357-B, 2018 WL 11303563, at *4 (11th Cir. July 31, 2018) (concluding that reasonable jurists would not debate that a Florida prisoner procedurally defaulted his claim that his nolo contendere plea violated due process where his brief on direct appeal, which challenged the trial court's denial of his motion to withdraw the plea, did not cite the Fourteenth Amendment, any federal case law, or any provision of the Constitution).

In the conclusion section of his initial brief on direct appeal, Barnes asserted, without elaboration, that his conviction and sentence resulted from "the Trial Court's failure to properly apply Florida law and failure to afford Appellant due process of law as guaranteed by the Florida and United States Constitutions." (Doc. 9-1, App. 9, p. 21.) This perfunctory reference to the United States Constitution, which does not appear in the

---

[14] "[A] nolo contendere plea is treated the same as a guilty plea and is governed by the same constitutional considerations." *Wallace v. Turner*, 695 F.2d 545, 546 (11th Cir. 1983).

body of the argument, did not exhaust a federal due process claim. In *Baldwin v. Reese*, the Supreme Court suggested that a petitioner could "indicate the federal law basis for his claim" by citing the federal source of law alongside the state-law claim, citing a case deciding such a claim on federal grounds, or simply labeling the claim as "federal." 541 U.S. at 32. But the Eleventh Circuit Court has explained that this language was dicta and has held that more than a cursory reference to federal law is required to fairly present a federal claim:

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitions seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair* [*v. Campbell*], 315 F.Supp.2d [1179,] 1184 [(M.D. Ala. Apr. 29, 2004)] (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L.Ed.2d 598 (1986)). This is consistent with settled law established by the Supreme Court. *See Picard* [*v. Connor*], 404 U.S. [270,] 275, 92 S. Ct. [509,] 512 [(1971)] ("We emphasize that the federal claim must be fairly presented to the state courts."). We therefore hold that " '[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" *Kelley*, 377 F.3d at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

*McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005).

Barnes's passing reference to his federal right to due process, without more, was insufficient to alert the state court that he intended for it to review a federal claim. *See id.*; *see also Gray*, 518 U.S. at 163 ("[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of" a federal constitutional claim in state court); *Ramos v. Sec'y, Dep't of Corr.*, 441 F. App'x 689, 696-97 (11th Cir. 2011) (concluding that a petitioner failed to exhaust a federal claim when he only "made one passing reference" to his federal constitutional rights to due process and a fair trial, without arguing federal standards or citing federal case law).

Barnes failed to satisfy the exhaustion requirement. He cannot return to state court to present the federal claim in a second direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (requiring that a notice of appeal be filed within 30 days of the rendition of sentence).[15] Therefore, Barnes's claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138.

Nor does Barnes show that an exception applies to overcome the default. *See id.* Although Barnes suggests that the trial court prevented him from developing an adequate factual record by denying his requests for a continuance, (Doc. 12, p. 7), that argument fails to explain why he could not have presented a federal due process claim on direct appeal. Besides, the trial court held a hearing on Barnes's motion to withdraw the plea, heard

---

[15] Barnes does not allege that he raised the due process claim in his Rule 3.850 motion. Even if he did, he failed to appeal the denial of that motion and cannot now file a belated postconviction appeal. *See* Fla. R. App. P. 9.141(c)(5)(A).

testimony from Barnes, and Barnes did not question Mr. Spaight even though he was in the courtroom. (*See* Doc. 9-1, App. 8, p. 12.) Ground Two affords Barnes no relief because it is barred from federal habeas review, and Barnes fails to show he can overcome the procedural default.

## V.   <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Barnes must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Barnes has not made the requisite showing. Finally, because Barnes is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Barnes's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Barnes and in Respondents' favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida on March 14, 2023.

Kathryn Kimball Mizelle
United States District Judge